UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRYSTAL BURDETTE-MILLER, individually and on behalf of similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br>WILLIAMS & FUDGE, INC.,<br><br>    Defendant. | No. 18 C 2187<br><br>Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiff Crystal Burdette-Miller ("Burdette-Miller") filed this putative class action against Williams & Fudge, Inc. ("WFI"), a debt collector and debt servicing company. (R. 20, First Am. Compl.) Before the Court is WFI's Motion to Dismiss. (R. 21, Def.'s Mot.) For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

Burdette-Miller is an Illinois resident who previously attended Lewis University. (R. 20, First Am. Compl. ¶¶ 11, 37.) WFI is a South-Carolina based corporation that contracts with colleges and universities nationwide to collect education-related loans and other receivables from current and former students. (*Id.* ¶ 12, 17.) Burdette-Miller alleges that WFI enters into form contracts with educational institutions governing the collection of students' debts, and then pursues student debtors and threatens them with exorbitant penalty fees in an unlawful attempt to collect maximum payments regardless of the terms of the students' tuition contracts with the educational institutions. (*Id.* ¶¶ 18-29.) Burdette-Miller alleges that because ordinary consumers are generally unaware that the collections WFI seeks are unlawful and unenforceable, many

unwittingly acquiesce to WFI's collection efforts. (*Id.* ¶ 33.) Even if the consumer realizes the demand is unlawful, she adds, the consumer is likely to pay some portion to settle the debt because fighting it requires time, energy, and resources and subjects the consumer to the expense of going to court and defending against the claim. (*Id.* ¶¶ 34-37.)

According to Burdette-Miller, WFI entered into such a contract with Lewis University and engaged in such tactics in an attempt to collect a tuition payment and 33% penalty from her. (*Id.* ¶¶ 37-44.) Specifically, she alleges that WFI called her on August 29, 2014, attempting to collect on a $7,345.33 debt it said she owed to Lewis University, and that it continued making calls and sending correspondence to her thereafter. (*Id.* ¶¶ 39-40.) She refused to pay. (*Id.* ¶¶ 39, 43.) On January 21, 2016, WFI's attorneys filed a collection against her, alleging that she owed Lewis University the same amount. (*Id.* ¶ 49.) Attached to the complaint was an account statement prepared by WFI breaking down that figure as $5,509 in tuition, and $1,836.33 (33% of the purported balance) as a collection fee, for a total of $7,345.33. (*Id.* ¶ 50.) Burdette-Miller retained an attorney who timely filed an appearance, but WFI nevertheless obtained a default judgment and began wage garnishment proceedings. (*Id.* ¶¶ 52-58.) The default was subsequently vacated, and the garnishment proceedings dismissed. (*Id.* ¶ 56.) Although Burdette-Miller's motion to dismiss the collection complaint was denied, the court struck WFI's request for a 33% fee as an "unenforceable penalty." (*Id.* ¶ 58.) After Burdette-Miller filed counterclaims against Lewis University in that action, it subsequently retained its own counsel although WFI's attorneys did not withdraw. (*Id.* ¶¶ 59-60.)

After two years of litigating the collection action, Burdette-Miller alleges, Lewis University disclosed for the first time on April 12, 2018, that the contract attached to the collection complaint was not the one to which Burdette-Miller agreed, despite the fact that the

2

copy filed with the complaint contained her electronic signature. (*Id.* ¶¶ 64-68.) Unlike the one WFI attached to the complaint, Burdette-Miller's actual tuition agreement with Lewis University did not purport to authorize a 33% collection fee, but rather a substantially lower one. (*Id.*) As a result, Burdette-Miller complains that she and Lewis University spent "more than two years and countless hours of attorney time litigating over collection fees that are not only unenforceable—they were not even applicable to begin with." (*Id.* ¶ 72.)

## PROCEDURAL HISTORY

On March 26, 2018, Burdette-Miller filed this putative class action against WFI complaining of its imposition of exorbitant collection fees and other purportedly unlawful collection activities. (R. 1, Compl.) WFI moved to dismiss the complaint in its entirety (R. 12, Def.'s Mot.), but the motion was denied without prejudice so that Burdette-Miller could amend her complaint to include the additional facts she said had developed since her initial filing. (R. 19, Min. Order.) On July 27, 2018, Burdette-Miller filed her first amended complaint, asserting claims of breach of contract (Count I), violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count II), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILL. COMP. STAT. § 505/1 *et seq.* (Counts III and IV), wrongful garnishment (Count VI), and for a declaratory judgment (Count V). (R. 20, First Am. Compl.) WFI again moved to dismiss the complaint (R. 22, Def.'s Mot.), and Burdette-Miller responded in opposition (R. 26, Pl.'s Resp.). WFI filed a reply (R. 27, Def.'s Reply), and Burdette-Miller filed a surreply (R. 29, Pl.'s Surreply). The motion is now ripe for resolution.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all possible inferences in the plaintiff's favor. *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but it must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but . . . need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (internal quotation omitted).

When considering a Rule 12(b)(6) motion to dismiss, the court may take judicial notice of matters of public record such as court records without converting the motion into one for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997). This includes state court orders and filings made in this and other courts. *See Cancer Found. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 676 n.2 (7th Cir. 2009); *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1137 n.14 (7th Cir. 2008).

## ANALYSIS

### I. Breach of Contract

WFI moves to dismiss Burdette-Miller's breach of contract claim on the basis that she is neither a party to nor a third-party beneficiary of the contract she complains was breached, WFI's collection contract with Lewis University. (R. 22, Def.'s Mot. at 4-7.) In addition, it argues, she fails to allege that WFI breached any particular one of the contract's terms. (*Id.*) According to WFI, the claim fails under either Illinois law, where Lewis University is located, or South Carolina law where WFI is domiciled. (*Id.* at 4.) Burdette-Miller admits she is not a party to the contract but argues that she nevertheless has standing to bring the claim under either Illinois or South Carolina law because she and the class she purports to represent are third-party beneficiaries. (R. 26, Pl.'s Resp. at 7.) According to Burdette-Miller, she adequately pleads breach by alleging that WFI attempted to collect debts under incorrect tuition agreements and assessed and collected unauthorized fees in violation of applicable law. (*Id.* at 9.)

Illinois law recognizes two types of third-party beneficiaries, intended and incidental. *Carlson v. Rehab. Inst. of Chi.*, 50 N.E.3d 1250, 1256 (Ill. App. Ct. 2016). Unlike an incidental beneficiary, who has no rights under a contract, "[a]n intended beneficiary is intended by the parties to the contract to directly benefit for the performance of the agreement; under the contract an intended beneficiary has rights and may sue." *Id.* Express language in the contract identifying the third-party beneficiary is the best evidence of intent to benefit that party, but an implied showing may be made where the implication that the contract applies to third parties is so strong as to be practically an express declaration. *Quinn v. McGraw-Hill Cos.*, 168 F.3d 331, 334 (7th Cir. 1999) (construing Illinois law). South Carolina law similarly provides that "if a contract is made for the benefit of a third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third

5

person." *Bob Hammond Constr. Co. v. Banks Constr. Co.*, 440 S.E.2d 890, 891 (S.C. App. Ct. 1994). Because there is no material difference between South Carolina and Illinois law on this issue, therefore, the Court need not undertake a choice-of-law analysis.

According to Burdette-Miller, the intent to benefit her and other student debtors is demonstrated by the provision of the contract requiring WFI to abide by federal and state laws including the FDCPA. (R. 26, Pl.'s Resp. at 7-8.) Because consumer protection laws are designed to protect consumers, she reasons, they are the "only plausible beneficiaries" of this provision of the contract. (*Id.* at 8.) As WFI correctly points out, however, "[t]he intent of the parties must be determined from the contract as a whole and not from any one clause standing alone," (R. 27, Def.'s Reply at 6 (citing *White v. White*, 378 N.E.2d 1255, 1258 (Ill. App. Ct. 1978)). *See also Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) ("A contract must be construed as a whole, viewing each provision in light of the other provisions. The parties' intent is not determined by viewing a clause in isolation . . . ." (Internal citations omitted)). Where the contract is clear and unambiguous, it must be enforced as written, and "the meaning of the contract, as well as the intention of the parties must be gathered from the document without the assistance of extrinsic aids." *Motorola Sols, Inc. v. Zurich Ins. Co.*, 33 N.E.3d 917, 941 (Ill. App. Ct. 2015).

The contract contains no express language indicating that the parties intended to benefit Burdette-Miller or student debtors like her. (R. 20-1, Collection Contract.) Burdette-Miller's arguments notwithstanding, the contract also makes plain when read as a whole that WFI's commitment to abide by state and federal law including the FDCPA when collecting debts for educational institutions like Lewis University was intended for the benefit of the institutions, on whose behalf it acts in performing its collection work. (*Id.*) Although an implied intent to benefit

6

a third party may in certain circumstances suffice, the implication from the contract must be "so strong as to be practically an express declaration." *Quinn*, 168 F.3d at 334 (internal quotation omitted). To the contrary here, the contract expresses only the intent that WFI perform at certain minimum levels on behalf of educational institutions like Lewis University, and that the institution be protected if WFI fails in its obligations. (R. 20-1, Collection Contract.) This is echoed in WFI's additional promises to "continue compliance training with all current and future employees," defend against any consumer protection claim, and "hold harmless the Institution, its agents, officers, or employees for any judgment recovered." (*Id.* ¶¶ 3, 5.) Any benefit inuring to Burdette-Miller and other student debtors is at most incidental. Because the contract does not plausibly suggest an intent to confer a direct benefit on Burdette-Miller, she lacks standing to sue for breach, and Count I is dismissed with prejudice. Accordingly, the Court need not reach WFI's additional arguments as to this claim.

## II. Fair Debt Collection Practices Act

WFI argues that Burdette-Miller's FDCPA claim is barred by its one-year statute of limitations. (R. 22, Def.'s Mot. at 7 (citing 15 U.S.C. § 1692k(d)).) According to WFI, the last act of which Burdette-Miller complains occurred on March 17, 2016, and Burdette-Miller's "general allegation" that WFI "continued making calls to Plaintiff and sent her correspondence attempting to collect a purported $7,345.33 debt," should be disregarded in favor of the more specific allegation. (*Id.* at 7 n.1.) Burdette-Miller argues in opposition that her complaint does not show it is barred by the statute of limitations, and in any event, both the discovery rule and the doctrine of equitable tolling apply to ensure its timeliness. (R. 26, Pl's Resp. at 4-6.) Specifically, she says, it was only on April 12, 2018, that she learned that WFI had filed an unlawful debt collection action against her on a contract she had never signed, and it was not

until Lewis University produced the correct contract that she became aware of her injury. (*Id.* at 6 & n.1.)

"Generally, affirmative defenses do not justify dismissal under Rule 12(b)(6)." *John K. Maciver Inst. for Pub. Policy v. Schmitz*, 885 F.3d 1004, 1014 (7th Cir. 2018) (internal quotation omitted). Accordingly, "because the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6)." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). At the pleading stage, the relevant question is whether "there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense . . . ." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). If so, the question of timeliness is better left for "summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Id.* The general rule notwithstanding, "[t]he exception occurs where . . . the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Burdette-Miller's complaint does not demonstrate the claim is untimely. First, the allegation that WFI "continued making calls" and writing to her (*see* R. 20, First Am. Compl ¶ 40) does not conflict with the allegations of conduct occurring on earlier specified dates nor is it so general that it may be ignored. This allegation alone makes it conceivable that Burdette-Miller's claim is timely. *See Sidney Hillman Health Ctr.*, 782 F.3d at 928.

Second, although WFI correctly observes that Burdette-Miller alleges that she was wronged by conduct that occurred on March 17, 2016 (R. 22, Def.'s Mot. at 7), she also alleges

that it was not until April 2018 that she learned that WFI had caused her to be sued on the wrong contract, and that it never had any basis in contract to demand a 33% collection fee. (R. 20, First Am. Compl. ¶ 64.) On this allegation, an earlier claim might be preserved. This is so despite WFI's emphasis on the fact that Burdette-Miller initially filed an FDCPA claim based in large measure on the same attempt to collect a 33% collection fee nearly a month before the April 12, 2018 disclosure. (R. 27, Def.'s Reply at 2-3.)

WFI's argument on this point overlooks two critical components of Burdette-Miller's complaint. First, even if a portion of Burdette-Miller's FDCPA claim is untimely, to the extent her claim is based on the allegations that WFI caused her to be sued on the wrong contract, it is not. An FDCPA claim may be based on multiple alleged acts giving rise to separately prosecutable violations. *E.g., Gajewski v. Ocwen Loan Servicing*, 650 Fed. App'x 283, 286 (7th Cir. 2016). Second, despite WFI's argument, the fact that Burdette-Miller had already complained of WFI's efforts to collect a 33% collection fee does not defeat the allegation that she did not learn until April 2018 that it never had a contractual basis to seek that amount in the first place. (*See* R. 20, First Am. Compl. ¶¶ 64-72.) Under the discovery rule, the beginning of the statute of limitations period for filing a suit is changed from "the date when the plaintiff is wronged to the date when he discovers he has been injured." *Sneed v. Winston Honore Holdings, LLC*, No. 16 C 2564, 2017 WL 467686, at *3 (N.D. Ill. Feb. 3, 2017) (internal quotation omitted). Similarly, "[e]quitable tolling 'permits a plaintiff to avoid the bar of the state of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.'" *Butler v. J.r.S-I, Inc.*, No. 15 C 6059, 2016 WL 1298780, at *4 (quoting *Clarke v. United States*, 703 F.3d 1088, 1101 (7th Cir. 2014)). Although Burdette-Miller does not plead the degree of her diligence in discovering her FDCPA claim based on the alleged

9

misrepresentation about the tuition agreement, she also does not plead facts from which she could have known sooner, and she plainly lays blame for the delayed discovery with WFI, upon whose representations she allegedly relied. (*See id.* ¶¶ 70-72.) Accordingly, even if her claim arising from the allegedly wrongful collection action began to run in 2016, either the discovery rule or equitable tolling arguably apply.

In any event, her claim suggests a "conceivable set of facts, consistent with the complaint, that would defeat the statute of limitations defense." *See Sidney Hillman Health Ctr.*, 782 F.3d at 928. Accordingly, the motion to dismiss the FDCPA claim (Count II) is denied.

### III. Illinois Consumer Fraud & Deceptive Practices Act

Burdette-Miller brings a deceptive practices claim and an unfairness claim under ICFA. (R. 20, First Am. Compl. ¶¶ 107-131.) WFI moves to dismiss both claims on the grounds that they are time-barred and that she fails to allege their requisite elements. (R. 22, Def.'s Mot. at 8-11.) A private action for damages under ICFA must be commenced within three years after the cause of action accrued. 815 ILL. COMP. STAT. 505/10a(e). According to WFI, Burdette-Miller was on notice of her ICFA claims when she talked to WFI on August 29, 2014, and equitable tolling cannot save the claims because she pleads that she told WFI during that call that she did not owe any money and would call Lewis University about it. (R. 22, Def.'s Mot. at 8-9; R. 27, Def.'s Reply at 5.) As a result, WFI reasons, she cannot demonstrate diligence because either she failed to call Lewis University, called and got information about her debt, or called and was refused information about her debt. (R. 27, Def.'s Reply at 5.) In any case, it says, she was at least on inquiry notice on August 29, 2014, the date of that first call. (*Id.*)

WFI's argument, however, omits numerous other possibilities, including that Burdette-Miller called and was told she owed the debt and the 33% collection fee, which according to the complaint was both WFI and Lewis University's position until April 12, 2018. (R. 20, First Am.

10

Compl. ¶¶ 39-43, 49-50, 64-68; R. 26, Pl.'s Resp. at 6.) As with Burdette-Miller's FDCPA claim then, her ICFA claims at a minimum suggest a "conceivable set of facts, consistent with the complaint, that would defeat the statute of limitations defense." *See Sidney Hillman Health Ctr.*, 782 F.3d at 928. Dismissal on timeliness grounds, therefore, would be inappropriate.

WFI argues further that the deceptive practices claim (Count III) fails because Burdette-Miller cannot show proximate causation or damages since she alleges telling WFI that she disputed the debt and she thus could not have been deceived by any WFI representation. (*Id.* at 9-10.) The unfair practices claim (Count IV) likewise fails for proximate causation, WFI argues, since the 33% collection fee of which she complains was based on her contract with Lewis University, not WFI. (*Id.* at 11.) According to Burdette-Miller, on the other hand, she adequately pleads proximate causation and damages by alleging that she was forced to expend time and money defending an unlawful collection action that she would have handled differently had WFI not misrepresented the debt she was told she owed. (R. 26, Pl.'s Resp. at 10.) Likewise, she says, because she alleges it was WFI who added the 33% collection fee and caused the collection action to be filed against her, she adequately states an unfair practice claim. (*Id.* at 11.) The Court agrees with Burdette-Miller on both counts.

"The elements of a claim under ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010); *accord Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). In addition, the allegedly unfair or deceptive acts must have proximately caused the plaintiff to suffer actual damage. *Oliveira v.*

11

*Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002). "Recovery may be had for unfair as well as deceptive conduct." *Robinson*, 775 N.E.2d at 960.

WFI's argument that Burdette-Miller cannot allege she was deceived or damaged too quickly disregards the allegations of her complaint. According to Burdette-Miller, although she told WFI that she did not owe the debt it claims, it continued contacting her and ultimately caused a lawsuit to be filed against her based on a contract she never signed and for an otherwise unlawful amount. (R. 20, First Am. Compl. ¶¶ 39-41, 111-116.) She alleges that as WFI intended, she was in fact deceived by WFI's misrepresentations—namely, she was unaware that it had falsely represented the amount she owed and its basis, and unaware that she had been sued on a contract she had never signed. (*Id.* ¶¶ 70-71, 111-20.) She further alleges that WFI's misrepresentations caused her actual damages by affecting her repayment decision and the way in which she defended against the collection action, and by causing her to waste time and money on attorney's fees and court costs defending against the claim in a way she otherwise would not have. (*Id.* ¶¶ 117-118, 120.) These allegations are plausible and suffice to meet the proximate causation and damages elements of her claim. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012) (misrepresentations that impact debtor's repayment decision satisfy proximate cause and damage elements of ICFA claim); *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 941 (N.D. Ill. 2012) (allegation that deceptive practice caused actual damages in time and money spent defending debt collection lawsuit sufficed to state a claim).

This is so despite WFI's emphasis on the fact that Lewis University was the plaintiff in the collection action filed against Burdette-Miller, not WFI, and its argument that because it was an independent contractor for Lewis University, it cannot be held vicariously liable. (*See* R. 22, Def.'s Mot. at 2-3; R. 27, Def.'s Reply at 3.) According to Burdette-Miller, although the

12

collection action was brought in Lewis University's name, it was WFI who retained the law firm and instructed it to sue her, WFI who prepared the false attachments filed with the collection complaint, and WFI who "directed and controlled the litigation and [the law firm's] conduct therein." (R. 20, First Am. Compl. ¶¶ 47-50, 53-54.) Moreover, Burdette-Miller alleges, it is WFI who added the 33% collection fee to her account to maximize its profits when it attempted to collect the purported debt. (*Id.* ¶¶ 19-22.) These allegations are taken as true for purposes of the pending motion. *See Vesely*, 762 F.3d at 664. WFI's arguments notwithstanding, Burdette-Miller's claims are based on the purported wrongdoing of WFI itself, and its arguments do not defeat her claim. *See Grant-Hall*, 856 F. Supp. 2d at 944.

Moreover, the provision WFI highlights in support of its argument—that WFI shall have no "independent authority to file suit on any account,"—does not mandate the conclusion that WFI could not have been the driving force of the collection action as Burdette-Miller claims. (*See* R. 22, Def.'s Mot. at 3 (citing R. 20-1, Collection Contract at 2).) Notably, the provision also declares that WFI "must receive written authority [from Lewis University] prior to filing suit," which is consistent with Burdette-Miller's theory that WFI was directly involved in the collection litigation. (R. 20-1, Collection Contract at 2.)

Accordingly, the motion to dismiss the ICFA claims (Counts III and IV) is denied.

## IV.     Declaratory Judgment

By her declaratory judgment count, Burdette-Miller seeks to invalidate WFI's collection contracts with its educational institution clients through which it seeks collection fees from student debtors. (R. 20, First Am. Compl. ¶¶ 132-41.) WFI moves to dismiss the count on the basis that no actual controversy exists between the parties. (R. 22, Def.'s Mot. at 12-13.) Since its contracts provide that WFI may charge collection fees to educational institutions like Lewis University, not students like Burdette-Miller, WFI reasons, there is no controversy between WFI

and Burdette-Miller for the Court to resolve. (R. 22, Def.'s Mot. at 12-13.) According to Burdette-Miller, on the other hand, a justiciable controversy exists because the contracts provide that WFI's "sole consideration" comes from the amount it collects from students, WFI has in fact sought to collect the 33% fee from her, and she has opposed its efforts. (R. 26, Pl.'s Mot. at 14.)

The problem for Burdette-Miller is that, unlike the cited authority on which she relies, *Gentleman v. Mass. Higher Educ. Assistance Corp.*, 272 F. Supp. 3d 1054 (N.D. Ill. 2017), Burdette-Miller is neither a party to nor a third-party beneficiary of the contracts about which she seeks a declaration. (*Supra,* Section I.) The fact that WFI retains a portion of any money it collects on behalf of Lewis University or its other educational institution clients does not change the fact that it does so under a contract to which she is a stranger. A judgment on the validity of WFI's collection contracts with Lewis University or any other educational institution, moreover, would not resolve her complaint since the fees she was charged emanate from a separate contract, her tuition agreement with Lewis University. (*See* R. 20, First Am. Compl.; R. 20-1, Collection Contract; R. 20-2, Tuition Agreement.) Even if her indirect interest in WFI's contract could establish constitutional standing to bring a declaratory judgment claim, moreover, she would still lack standing "under the prudential rule that a litigant cannot sue to enforce the legal rights of another." *Edgewood Manor Apt. Homes, LLC v. RSUI Indemn. Co*, 733 F.3d 761, 771-72 & n.2 (7th Cir. 2013) ("The Declaratory Judgment Act provides a cause of action only to those seeking a declaration of their own legal rights.") Accordingly, the declaratory judgment count (Count V) is dismissed. Because Burdette-Miller cannot amend to establish standing for this claim, the dismissal is with prejudice.

**V.     Wrongful Garnishment**

Finally, WFI moves to dismiss Burdette-Miller's wrongful garnishment count on the grounds that it cannot be held liable for any litigation action taken by Lewis University, and

because even if it later proved wrongful for the university to seek to garnish Burdette-Miller's wages, it did so reasonably and in good faith following the entry of a default judgment against her in the collection action. (R. 22, Def.'s Mot. at 11-12.) Moreover, WFI says, because no garnishment was ever effectuated, Burdette-Miller fails to state a claim. (*Id.*) Burdette-Miller argues in opposition that because the default judgment was vacated and the garnishment action dismissed with directions to pay her costs, she sufficiently alleges the action was undertaken without a valid judgment, and she is entitled to recoup all her damages including attorney's fees. (R. 26, Pl.'s Resp. at 13-14.)

At the threshold, the Court notes that as with Burdette-Miller's consumer fraud claims, whether Lewis University was the named plaintiff in the state court proceedings does not necessarily defeat the claim. (*See supra*, Section I.) Her claim nevertheless fails however because she has not alleged an actual garnishment. A claim for wrongful garnishment is alleged either as a malicious prosecution claim or a wrongful attachment. *Neri v. J.I. Case Co.*, 566 N.E.2d 16, 18 (Ill. App. Ct. 1991). It is the latter form she seeks to bring. (R. 20, First Am. Compl. ¶¶ 142-46; R. 26, Pl's Resp. at 13-14.) As Burdette-Miller's own authority notes, "[n]o real distinction exists between wrongful garnishment and wrongful attachment." *Neri*, 566 N.E.2d at 18. While recoverable damages for a successful claim might entitle her to recoup attorney's fees, she cites no authority to suggest she might establish her claim without an actual garnishment. (R. 26, Pl.'s Resp.; R. 29-1, Pl.'s Surreply.) The claim (Count VI) is therefore dismissed. If Burdette-Miller can amend her complaint to allege that a garnishment was effectuated against her, she must do so within 14 days of this order.

## CONCLUSION

For the foregoing reasons, WFI's Motion to Dismiss (R. 26) is GRANTED in part and DENIED in part. The breach of contract claim (Count I) and declaratory judgment claim (Count V) are DISMISSED WITH PREJUDICE, and the wrongful garnishment claim (Count VI) is DISMISSED WITHOUT PREJUDICE. The motion is DENIED as to the ICFA claims (Counts II and III), and the FDCPA claim (Count IV). Plaintiff is given 14 days, or until January 29, 2018, to file an amended complaint consistent with this order. The stay on mandatory initial disclosures is lifted. A status hearing is set for February 5, 2019, at 9:45 a.m. The parties are DIRECTED to exhaust all settlement possibilities prior to the status hearing.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

**Dated: January 15, 2019**